UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| WILLIE T. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11CV181 SNLJ |
| | ) | |
| TRINITY MARINE PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's partial motion to dismiss, #14, filed on December 9, 2011.  Plaintiff, who is proceeding *pro se*, has not responded to this motion, and the deadline for responding has passed.[1]

**I.  Plaintiff's Title VII Complaint**

Plaintiff filed a complaint, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, alleging claims of discrimination against defendant, his former employer, on the bases of race, color, and gender, for acts of retaliation and harassment and for terminating his employment.  Compl. ¶¶ 10-11.  In its motion, defendant states that plaintiff has included improper claims of discrimination in his complaint that were not administratively investigated and exhausted and argues that those claims should be dismissed.  For purposes of this motion, the Court accepts as true all of the following allegations set forth in plaintiff's complaint.

---

[1]In its prior Order of April 3, 2012, the Court expressed its willingness to grant plaintiff an extension of time to respond to defendant's motion to dismiss should he need one, but plaintiff has not requested an extension.

-1-

Plaintiff, who is African-American, claims that on September 11, 2009, he was told by his supervisor, Robert Underwood, to assist a white co-worker with his work assignments after other white co-workers had refused to assist him.[2]  Compl. p. 5; Def. Exhibit A.  After again being told to assist that co-worker several times over subsequent days, plaintiff complained to Underwood that such orders to assist a white employee, when the African-American employees were not given similar assistance by white employees, constituted racial discrimination.  Compl. p. 5.  Plaintiff claims that after he made this complaint, he was retaliated against by Underwood and another supervisor, Jerry Clark, by being given disfavored jobs, being ordered to do a white co-worker's work for him, and by being "undermine[d], belittle[d]," and enticed to quit.  *Id.* at 6.  After several months of this alleged retaliation and harassment, plaintiff was falsely accused of speaking on the telephone during a break, which apparently was a violation of work rules, and given a written admonishment with a two-day suspension by Kevin Bolton, another supervisor.  *Id.* at 6.  Plaintiff states that he attempted to speak to a human resources officer, Patty Mathis, regarding the discrimination, but she was busy at the time and unable to speak to him.  *Id.* at 6.

Later, plaintiff witnessed a female employee, who is presumably white, refusing to assist a male African-American employee with his work when told to do so.  *Id.* at 8.  Although Underwood was aware that she had refused to help, she was not disciplined by him.  *Id.*  Plaintiff asked her why she refused to help and remarked to her that "we are no longer in times of separation," and he told her that if he saw her refuse again, he would "report it to the front office."  *Id.*  Plaintiff was then approached by Bolton, Underwood, Clark, and the female co-

---

[2]In his amended charge of discrimination, plaintiff states that the discriminatory action took place on September 14, 2009.  Def. Exhibit A.  In his judicial complaint, plaintiff states that the discrimination occurred on September 7, 2009.  Compl. ¶ 5.

worker, and was told by Bolton that he "was wrong in saying these things" to her, asked him who he thought he was, and told him he "was nobody." *Id.* at 8.

An investigation into the incident was conducted and witnesses were interviewed. *Id.* at 7. The following Monday, plaintiff was called into the office by Bolton and Mathis, told that he "was wrong in saying these things" to the female employee, and was informed that she had filed a written complaint against him and that both of them were being investigated. *Id.* Plaintiff was instructed not to return to work until further notice. *Id.* Thereafter, plaintiff was interviewed regarding the incident by Mathis and Carl Goodale, presumably the head supervisor, and was informed by them the following day that he was being terminated. *Id.* at 7, 10. The female employee was not disciplined for the incident. *Id.* at 10. Plaintiff filed an amended charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR"), charge number EEOC 28E-2010-00164, on June 14, 2010, alleging discrimination on the bases of race and retaliation. *See* Def. Exhibit A.

## II.   Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555

(pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).  The Court may review defendant's motion to dismiss without converting it into one for summary judgment, pursuant to Fed. R. Civ. 12(c), even though defendant has included a copy of plaintiff's amended charge of discrimination.  *Blakley v. Schlumberger Technology Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("an EEOC charge is a part of the public record and may be considered on a motion to dismiss").

### III.  Discussion

Defendant argues that plaintiff's administratively unexhausted claims of discrimination based on sex, and age, as well as his claim of harassment, should be dismissed because they were not included in his amended charge of discrimination.  "As a prerequisite to filing a judicial complaint under Title VII, a plaintiff must file a timely charge with the EEOC" that sets forth the facts and nature of the charge, and he must receive notice of his right to sue in federal court. *Taylor v. Catholic Cemeteries of the Archdioces of St. Louis*, 2005 WL 2090798, *5 (E.D. Mo. August 30, 2005) (citing 42 U.S.C. § 2000e-5(b)); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994).  Exhaustion of administrative remedies "is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts."  *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir.1996) (quoting *Williams*, 21 F.3d at 222) (internal quotations omitted).  Thus, the Court turns to whether plaintiff's gender and age discrimination and harassment claims have been administratively exhausted prior to him bringing them in his judicial complaint.

Upon review of plaintiff's amended charge of discrimination, the Court first finds that he failed to exhaust his administrative remedies with regard to his gender discrimination claim.[3] *See* Def. Exhibit A.  Plaintiff did not check the box marked "sex" on the amended charge, and his narrative description of his claims before the EEOC does not mention gender discrimination in any way.  Therefore, the Court finds that plaintiff failed to administratively exhaust any claim of gender discrimination, and he may not bring such a claim in his federal complaint. *Shannon*, 72 F.3d at 684.

Likewise, any claim of age discrimination within plaintiff's complaint must also be dismissed.  The administrative claim exhaustion requirement for claims of discrimination pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq*. ("ADEA"), is slightly different than requirements for claims made pursuant to Title VII.  Under the ADEA, a claimant is not required to bring a claim of age discrimination in an equal employment opportunity complaint, but if he chooses not to do so, he must provide the EEOC with notice of intent to sue no sooner than thirty days prior to filing suit and within 180 days of the alleged unlawful practice.  29 U.S.C. § 633a(d); *Coons v. Mineta*, 410 F.3d 1036, 1039, (8th Cir. 2005).  Because Missouri law also prohibits age discrimination, this filing deadline is extended from 180 to 300 days. *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 835 (8th Cir. 2002); *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1327 (8th Cir. 1995); 29 U.S.C. § 626(d)(2).

---

[3]Plaintiff's claim of gender discrimination in his federal court complaint is obscure. While he did check the line labeled "gender" under the listing of types of discrimination, it can only be inferred from his narrative description that his claim relates to the allegation that he was disciplined after the female co-worker filed the complaint against him, but she was not.  Compl. ¶ 11 and p. 10.

In his judicial complaint, plaintiff marked out and initialed the line stating that he was bringing this action pursuant to the ADEA and did not mark the line listing age discrimination as a basis of his claims, but he did mark the line stating that fewer than sixty days had passed since he filed a charge of age discrimination with the EEOC. Compl. ¶¶ 11, 9. Plaintiff makes no mention of being discriminated against on the basis of age in his narrative description of his claims in either his federal complaint or his EEOC charge, and he did not mark the "age" discrimination box on his EEOC charge. *See id.* pp. 5-10; Def. Exhibit A. Since plaintiff has provided no evidence that he exhausted his administrative remedies by bringing an age discrimination claim before the EEOC or MCHR, the Court will dismiss this claim without prejudice.[4]  29 U.S.C. § 633a(d).

Lastly, the Court turns to plaintiff's claim of harassment and defendant's contention that plaintiff failed to exhaust his administrative remedies with regard to this claim as well. In his amended charge of discrimination, plaintiff clearly included a claim of "race" and "retaliation," but he did not claim harassment or that he was subjected to a hostile work environment on the basis of race. Def. Exhibit A. Although there is no box on the charge form labeled "harassment" or "hostile work environment" that he could have checked, there is a box labeled "other," which plaintiff left blank. In the relevant portion of his narrative description, plaintiff states that he "was subjected to different terms and conditions of employment due to [his] race, black, and *in retaliation* for complaining about discriminatory terms and conditions of employment." *Id.*

---

[4]Defendant has not produced evidence that plaintiff failed to file an administrative charge of age discrimination separate from his amended charge number EEOC 28E-2010-00164 (Exhibit A); and thus, plaintiff may seek leave to amend his complaint to allege a claim of age discrimination if he can present evidence that he filed such a charge with the EEOC or MCHR.

(emphasis added). Although plaintiff states that he was "subjected to different terms and conditions of employment" due to his race, he does not allege that a racially hostile work environment existed or that he was harassed because of his race in his amended charge. *Id.*

A discrimination complainant "will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Williams*, 21 F.3d at 222. The "breadth of the civil suit is . . . as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000). The question before the Court, therefore, is whether plaintiff's harassment claim in his judicial complaint is like or reasonably related to his exhausted claims of race-based discrimination or retaliation. When appropriate, federal courts should "construe [*pro se*] civil-rights and discrimination claims charitably," but courts have been simultaneously cautioned that "there is a difference between liberally reading a claim which lacks specificity . . . and inventing, *ex nihilo*, a claim which simply was not made." *Shannon*, 72 F.3d at 685 (quotation omitted).

The Eighth Circuit has held that a claim of racial discrimination based on a discrete event "is not like or reasonably related to claims of ongoing racial harassment." *Davis v. Staff Management*, 2011 WL 4857909, *3 (E.D. Mo. Oct. 13, 2011) (citing *Dorsey*, 278 F.3d at 838-39). A racially motivated termination of employment is a discrete act where the discriminatory motive is subjectively formed by the person who has authority to discharge the employee. *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 672 (8th Cir. 1994); *see also Dorsey*, 278 F.3d at 838-39. By contrast, a claim of racial harassment "focuses on the pervasiveness of the racially discriminatory conduct and also the employer's possible knowledge of that conduct and failure to

take remedial action." *Id.* In *Tart v. Hill Behan Lumber Co.*, the Court held that the plaintiff's unexhausted harassment claim was not reasonably related to his race-based termination charge, finding that the alleged race-based harassment by co-workers over an eleven-year period was distinct from the incident that precipitated the plaintiff's termination and "offer[ed] little, if any, insight" into the discharging official's motivation for terminating him. *Id.* at 673.

Here, plaintiff has offered nothing in response to defendant's motion to explain how his harassment claim is related to his other claims and should be deemed exhausted. In his judicial complaint, plaintiff alleges that he was harassed for complaining about the racial discrimination stemming from being ordered to help a white employee by two supervisors, Underwood and Bolton (and others). He does not claim that the other officials who made the decision to terminate his employment, Goodale and Mathis, had harassed him in any way or were aware of the prior harassment.[5] Plaintiff has failed to allege or argue why the subjective belief of Goodale and Mathis that he should be terminated was in any way related to the other employees' alleged harassment. Moreover, his allegations of harassment offer no insight regarding why he was terminated by officials not involved with the harassment. Therefore, plaintiff's harassment claim is not reasonably related to plaintiff's claim of racial discrimination. *Tart*, 31 F.3d at 672-73.

Similarly, claims of racially motivated retaliation are different than race-based harassment claims. This Court has previously held that a claim of race-based hostile work environment was not reasonably related to a *pro se* plaintiff's administrative charge of discriminatory discharge and/or retaliation. *Stephens v. Keefe Commissary Network, LLC*, 2007 WL 1796216, *9 (E.D.

---

[5]Plaintiff alleges that he had previously attempted to talk to Mathis about the harassment but was not able to do so. Compl. p. 6 ("I briefly spoke with Patty Mathis in [the] HR department about *needing to talk with her about some things going on* in my department, but she could not talk at this particular time.") (emphasis added).

Mo. June 19, 2007) (citing *Tart*, 31 F.3d at 671).  For a claim of hostile work environment to be "properly exhausted [it] must be separately raised in the administrative charge, because it is not reasonably related to a claim of discrete act of discrimination, such as [a termination]." *Id.* (quoting *Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 229 (8th Cir. 1996) (internal quotation omitted)).  Here, plaintiff did not include, in his amended charge, a claim for racial harassment or any allegations that would support a claim of racial harassment.  *See id.; cf. Colquitt v. St. John's Mercy Health Service*, 2012 WL 95615, *3 (E.D. Mo. Jan. 12, 2012) (*pro se* plaintiff's judicial claim of harassment was reasonably related to claim of racial discrimination because she included numerous allegations in her administrative charge relating to adverse conditions that occurred because of her race and that she worked "in an environment where racially motivated actions inhibited her ability to do her job properly").  In his administrative charge, plaintiff did not state, for example, that he was given less favorable tasks or that he was belittled and encouraged to quit, or that he was told he "was nobody," or similar such facts.  *See* Exhibit A.  Thus, plaintiff's harassment claim is not reasonably related to his racial discrimination or retaliation claims and will be dismissed for failure to exhaust his administrative remedies.

**IV.  Conclusion**

For the foregoing reasons, plaintiff's unexhausted claims of gender discrimination and racial harassment will be dismissed with prejudice, and his claim of age discrimination will be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss, #14, is **GRANTED**.  Plaintiff's claims of discrimination on the bases of gender and harassment/hostile work

environment are **DISMISSED** with prejudice, and plaintiff's claim of discrimination on the basis of age is **DISMISSED** without prejudice.

Dated this  9th  day of May, 2012.

/s/ Stephen N. Limbaugh, Jr.
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE